IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEMITRIA BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:09-CV-838-WKW [WO] |
| | ) |
| ALLSTATE INDEMNITY COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Allstate Indemnity Company, Inc.'s ("Allstate") Motion for Partial Summary Judgment and accompanying brief and evidentiary submission. (Docs. # 25-27.) Allstate seeks summary judgment on Counts II-V of Plaintiff Demitria Butler's ("Ms. Butler") Complaint. Ms. Butler opposes the motion as to Count II, but not as to Counts III-V.[1] (Docs. # 34, 35.) The issues regarding Count II of the Complaint (bad faith) having been fully briefed, the motion is ripe for review. For the reasons set forth below, Allstate's Motion for Partial Summary Judgment is due to be granted.

---

[1] Ms. Butler does not address Allstate's well-supported grounds for summary judgment on Counts III, IV, or V (unjust enrichment, conversion, and negligence, respectively) in her opposition brief to summary judgment. (Pl.'s Opposition Br. (Doc. # 35); Def.'s Br. in Support 17-20 (Doc. # 26).) Accordingly, these claims are deemed to have been abandoned. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting former Fed. R. Civ. P. 56(c)).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  What is material is determined by

the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear

3

the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

On summary judgment, the facts must be viewed in the light most favorable to the non-movant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III. BACKGROUND

The evidence, construed in the light most favorable to Ms. Butler, establishes the following facts.

Ms. Butler began insuring her real estate, home, and possessions with Allstate in May 1998. (Compl. ¶ 9 (Doc. # 1, Attach. 2).) Ms. Butler's home suffered damages in a fire on August 27, 2008, and on the same day, she reported the loss to Allstate pursuant to her Deluxe Plus Homeowners Policy No. 9 21 477507 05/03 then in effect. Allstate property adjuster Jerry Hamilton inspected the home on September 4, 2008, completed a summary report of his findings, and took photos of the property. (Claims History 7 (Doc. # 27, Ex. C).) When Mr. Hamilton contacted Ms. Butler by telephone on September 9, 2008, to discuss her retention of a contractor, Ms. Butler communicated that three separate contractors told her the house required total demolition. (Claims History 8; Butler Dep. 61-62 (Doc. # 27, Ex. B); Hamilton Aff. ¶ 5 (Doc. # 36, Ex. 4).) Mr. Hamilton responded that Allstate

intended to salvage the brick veneer structure of the home while gutting and repairing the portions of the home damaged by fire. (Butler Dep. 60-61.)

Although Mr. Hamilton conveyed to Ms. Butler Allstate's opinion that a total demolition was unnecessary, he nevertheless agreed to have structural engineer Joel D. Wehrman examine the home. (Claims History 8; Hamilton Aff. ¶ 5.) Mr. Wehrman visited the home on September 11, 2008, and concluded that the home was repairable. (Hamilton Aff. ¶ 7; Wehrman Oct. Rep. (Doc. # 27, Ex. F).) Mr. Wehrman's report states that "there are extensive structural damages to the Butler house, but . . . since approximately half the house has no structural damage and because there is no damage to the floor framing or foundation, I believe that it would be possible to repair the building . . . ." (Wehrman Oct. Rep. 5.)

Mr. Hamilton then met with Ms. Butler and a contractor of her choice, ICON Restoration, Inc. ("ICON"), and began negotiating an estimate for repair. ICON was in agreement with Mr. Hamilton as to the estimate for repairs but Ms. Butler later advised Mr. Hamilton that she would employ another contractor. (Hamilton Aff. ¶ 10.)

In the meantime, Ms. Butler had collected professional opinions supporting her position in favor of total demolition and reconstruction. Contractor Tom Ward expressed his concern that if damaged wall studs were removed, "there does not appear [to be] a structurally correct way to re-attach new studs and place them inside an existing mortar joint." (Ward Letter (Doc. # 35, Ex. D).) Contractor Barry McCollough "recommend[ed]

5

[against] gutting the house and trying to rebuild a fire damaged brick façade" because "the integrity of the mortar ha[d] been compromised from the fire and there [was] no proper way to tie the existing brick façade back to the new walls." (McCollough Letter (Doc. # 35, Ex. E).) An inspector for the City of Tuskegee, Charlie Bowen, commented on a City of Tuskegee Property Maintenance Code Form that the "[s]tructure should be replaced."[2] (Tuskegee Inspection Form 4 (Doc. # 35, Ex. F).) Mr. Bowen subsequently clarified his remarks in an unsworn statement to reflect that he could only recommend an inspection by a structural engineer. (Bowen Statement (Doc. # 36, Ex. 5).)

In light of these opinions, Ms. Butler reported her position to Allstate that the brick veneer of the home needed demolition and replacement because the mortar had lost its integrity during the fire. (Claims History 19.) She also asserted that demolition would be necessary to satisfy local building code requirements. (Claims History 19.) Ms. Butler hired structural engineer Danny P. Raines, who provided Mr. Hamilton a report and cover letter explaining his professional opinion that

> the timber framing of the structure is unsafe and must be removed and re-built. It was not possible through visual examination to determine whether the clay brick masonry or cement mortar were heat-damaged . . . . *[T]esting should be performed to determine the damage (if any) on the masonry and mortar*. If it is determined that the masonry and mortar materials have been damaged, the masonry should be removed and replaced. If it is determined that the masonry veneer can remain, extreme care must be taken during demolition of the exterior backing walls to not damage the veneer . . . . Salvaging the masonry

---

[2] No explanation is given for Mr. Bowen's conclusion, and the comment comes after a seemingly contradictory recommendation that a "[s]tructural engineer should assess the property to determine if all structural load-bearing members are damaged." (Tuskegee Inspection Form 4.)

>veneer could prove to be difficult and possibly approach, if not exceed, the cost of removal and replacement.

(Raines Rep. 2 (emphasis added).) Mr. Hamilton did not believe that Mr. Raines's report contradicted Allstate's prior assessment that repair was possible, and he communicated his belief to Ms. Butler. (Claims History 20; Hamilton Aff. ¶ 12.)

Another contractor hired by Ms. Butler sent Allstate an estimate that appeared to quote a price for total demolition and replacement of the home. (Claim History at 21.) Mr. Hamilton contacted Mr. Wehrman regarding the potential need for testing the strength of the mortar joints. Relying on information provided by the Brick Industry Association and the National Concrete Masonry Association, Mr. Wehrman responded that the lack of visual cracking in the veneer, as well as the minimal burning of the wall sheathing behind the veneer, led him to believe that "the mortar joints were not exposed to conditions sufficient to reduce the strength of the bricks or mortar joints." (Wehrman Dec. Rep. 2 (Doc. # 27, Ex. K).) Mr. Wehrman wrote that he "[did] not believe further testing [was] warranted." (Wehrman Dec. Rep. 3.)

In spite of Mr. Wehrman's recommendation, Mr. Hamilton decided to send Mr. Wehrman back to test the integrity of the mortar. (Claim History at 22.) Mr. Wehrman visited the site again, examined the mortar joints, and submitted a second report stating that he found "no signs of softening, cracking or spalling" of the brick veneer or the mortar joints – only some cosmetic soot and smoke stains at the top of walls. (Wehrman Dec. Rep. 1 (Doc. # 27, Ex. L).) During his December visit, Mr. Wehrman performed "Windsor Pin

test[s]" (or "in-situ" tests) on the compressive strength of the mortar joints at various points around the perimeter of the structure. (Wehrman Dec. Rep. 1.) He concluded that the compressive strength of the joints was "well above the minimum strength levels required by building codes," even at areas that were nearest to the fire damage. (Wehrman Dec. Rep. 2.) Mr. Wehrman also communicated his opinion that no further testing of the brick and mortar was needed. (Wehrman Dec. Rep. 2.) These opinions were documented by Allstate, and Mr. Hamilton called Ms. Butler to advise her of the report. (Claim History at 22.)

On January 26, 2009, Mr. Hamilton mailed Ms. Butler a letter stating that while he understood her demand for total demolition and reconstruction, he believed the parties had reached an impasse on the issue and that Allstate was electing to repair rather than demolish and rebuild Ms. Butler's home. (Claim Denial Letter 1 (Doc. # 27, Ex. N).) As bases for Allstate's decision, the letter cited Mr. Wehrman's findings, as well as the fact that a licensed contractor (ICON) had inspected the property and had agreed that the home could be repaired at Allstate's quoted estimate. (Claim Denial Letter; Hamilton Aff. ¶ 13.) The letter also cited the relevant portion of Ms. Butler's insurance policy that reserved for Allstate the discretion to repair or rebuild the insured property.[3] (Claim Denial Letter 1-2.) Enclosed

---

[3] The provision reads:

> In the event of a covered loss, **we** have the option to: a) repair, rebuild, or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or b) pay for all or any part of the damaged, destroyed or stolen property . . . . Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

(Homeowner's Policy 15 (emphasis in original).)

8

with the letter was a copy of the repair estimates, the most recent engineering report, and a check for $79,436.43, the cash value of the estimated repair costs.[4] (Claim Denial Letter 2; Allstate Payment Summary (Doc. # 27, Ex. O).) Ms. Butler rejected the check and returned it to Allstate.

Two months after receiving the Claim Denial Letter, Ms. Butler retained a final structural engineering consultant, Gordon L. Davis. (Davis Rep. (Doc. # 35, Ex. H).) Mr. Davis's Report rebuts Allstate's repair proposals, concluding that the damage "is of a magnitude that requires total replacement of the structural components of the residence" from subfloor to roof "at the southern two-thirds of the residence." (Davis Rep. 3.) Mr. Davis questioned the usefulness of Mr. Wehrman's "Windsor probe" mortar testing, stating that the tests "were of no significant value, since the brick veneer is not a structural component and the strength of the mortar is not a significant criteria [sic] in determining if continued usage of the brick veneer is possible." (Davis Rep. 4.) Mr. Davis concluded that total demolition and reconstruction was the most "practical" and "economical" route to take because there was little to salvage in the home. (Davis Rep. 5.)

Ms. Butler filed the instant Complaint against Allstate and Mr. Hamilton in Macon County Circuit Court. Allstate removed the case to this court, and Mr. Hamilton was dismissed as a fraudulently joined defendant.

---

[4] Allstate's letter states that its repair estimate was $102,752.60. The amount Allstate was willing to pay Ms. Butler for the repairs reflected depreciation. (Adjuster Summary 26 (Doc. # 27, Ex. G).)

9

## IV.  DISCUSSION

The only issue is whether Allstate is entitled to summary judgment on Ms. Butler's bad faith claim alleged in Count II of the Complaint.  Under Alabama law, there are two kinds of bad faith: the "normal" case and the "abnormal" case.  *See Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008).  Ms. Butler's Complaint alleges both varieties.  (Compl. ¶ 23 (alleging that Allstate either "failed and/or refused to pay [the] claim without any legitimate, arguable, or debatable reason for such failure and/or refusal" or that it "failed to adequately investigate the claim").)  The two varieties will be addressed separately.

### A.   "Normal" Bad Faith Case

The elements of a normal claim of bad faith are: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001); *see also Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (same).

The third element requires the plaintiff to show "the absence of any reasonably legitimate or arguable reason for denial of a claim." *Jones*, 1 So. 3d at 32 (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306 (Ala. 1999)); *see also Koch v. State Farm Fire & Cas. Co.*, 565 So. 2d 226, 229 (Ala. 1990) (framing the third element as requiring the plaintiff to show "the absence of a reasonably legitimate or arguable reason for that refusal

(the absence of a debatable reason) . . . .") (citation and internal quotation marks omitted). "A debatable reason means an arguable reason; a reason that is open to dispute or question." *Koch*, 565 So. 2d at 229 n.4. To demonstrate the absence of an arguable reason, the plaintiff must "establish that he or she [is] entitled to judgment as a matter of law on the underlying claim for breach of contract." *Poarch v. Alfa Mut. Ins. Co.*, 799 So. 2d 949, 953-54 (Ala. 2000). The so-called "directed verdict rule" (now judgment as a matter of law) does not demand that "the trial court literally grant[ ] plaintiff's motion for a directed verdict on the contract." *Safeco Ins. Co. of Am. v. Sims*, 435 So. 2d 1219, 1224 (Ala. 1983) (Jones, J., concurring specially). In *Sims*, Justice Jones explained that

> th[e] [directed verdict] test is intended as an objective standard by which to measure plaintiff's compliance with his burden of proving that defendant's denial of payment was without any reasonable basis either in fact or law; *i.e.*, that defendant's defense to the contract claim is devoid of any triable issue of fact or reasonably arguable question of law.

*Id.* at 1224-25. Thus, "'[i]f any one reason for denial of coverage is at least 'arguable,' [a] court need not look any further,' and a claim for bad faith refusal to pay will not lie." *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) (quoting *McLaughlin v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983)) (holding that to succeed at summary judgment, the defendant insurer only has the burden of showing "that it had a legitimate or arguable basis for the denial of the claim.").

Ms. Butler's "normal" bad faith claim against Allstate falls short under this standard.

11

First, Allstate did not withhold payment of Ms. Butler's claim altogether;[5] rather, the parties disagree whether Allstate should have paid *more* for the total reconstruction Ms. Butler demanded instead of paying only for repairs.

Second, Ms. Butler's "normal" bad faith claim fails because there were arguable reasons for Allstate's refusal to pay Ms. Butler's claim for a total reconstruction of her home. *See Weaver*, 574 So. 2d at 774. The opposing evidentiary submissions demonstrate that Allstate and Ms. Butler disputed the necessity of a total demolition and reconstruction of Ms. Butler's home. Importantly, Ms. Butler does not take the position that no such dispute existed at all. Even though Ms. Butler has the support of several structural engineers and contractors who propose (with varying degrees of certainty) that repair of the home would be unsafe, impractical, or uneconomical (Doc. # 35, Exs. D, E, F, G, H), Allstate elected to repair the home based on the opinion of at least one contractor and the two investigations of its own structural engineer, Mr. Wehrman. (Doc. # 27, Exs. F, K, L).

The undisputably conflicting professional opinions in this case are indicative of a debatable reason for the non-payment of Ms. Butler's claim for reconstruction. *See, e.g., Adams v. Auto-Owners Ins. Co.*, 655 So. 2d 969, 971-72 (Ala. 1995) (holding that an insurer's action based on professional opinions provided "arguable and legitimate reasons" for denying a claim); *see also Koch*, 565 So. 2d at 229. Thus, Ms. Butler would not be

---

[5] Allstate remitted checks totaling $177,818.53 for Ms. Butler's additional living expenses, personal property losses, and dwelling repairs. (Claim Summary (Doc. # 27, Ex. P).) Ms. Butler refused to accept $79,436.43 of that amount for repairs for her home. (Compl. ¶ 14.)

entitled to judgment as a matter of law on the breach of contract claim. *See Jones*, 1 So. 3d at 34. "[W]here a legitimate dispute exists as to liability, . . . a tort action for bad faith refusal to pay a contractual claim will not lie." *Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So. 2d 1288, 1290 (Ala. 1984). Accordingly, summary judgment is due to be entered in favor of Allstate on Ms. Butler's "normal" bad faith claim for failure to pay.

B.     **"Abnormal" Bad Faith Case**

Under Alabama law, an "abnormal" case of bad faith involves "(1) intentional or reckless failure to investigate a claim, (2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, (3) the manufacture of a debatable reason to deny a claim, or (4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim." *Jones*, 1 So. 3d at 32 (citing *Slade*, 747 So. 2d at 306-07). Unlike a normal case of bad faith, the plaintiff in an abnormal case of bad faith failure to pay need not show entitlement to judgment as a matter of law on the underlying breach of contract claim. *Id.* (citing *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006)).

Ms. Butler appears to allege that Allstate acted in bad faith in three ways. First, Ms. Butler alleges that Allstate "failed to adequately investigate [her] claim." (Compl. ¶ 23.) She claims that Allstate failed to "thoroughly examin[e] and test[ ] to determine the structural soundness of the home." (Compl. ¶ 23; Pl.'s Br. in Opposition 5.) The Alabama Supreme Court has stated that "an insurance company has a 'responsibility to marshal all . . . facts' necessary to make a determination as to coverage '*before* its refusal to pay.' This duty must

13

include a duty to investigate [the] covered event" that is alleged to have caused the insured's loss. *Jones*, 1 So. 3d at 36 (quoting *Aetna Life Ins. Co. v. Lavoie*, 505 So. 2d 1050, 1052-53 (Ala. 1987) (emphasis in original)).

There is no genuine issue of material fact that Allstate satisfied its duty to investigate Ms. Butler's claim before making its decision to repair rather than reconstruct her home. A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell*, 276 F.3d at 1279. Ms. Butler does not dispute that Allstate sent its adjuster, Mr. Hamilton, to the site to examine the loss and prepare a preliminary estimate for repairs. (Hamilton Aff. ¶ 4.) Ms. Butler does not dispute that Mr. Hamilton communicated with ICON, Ms. Butler's first contractor, and reached an accord as to the estimated cost of Allstate's repairs. (Hamilton Aff. ¶¶ 9-10; Claim Denial Letter.) When Ms. Butler communicated her concern that repair would be unsafe or inefficient, Allstate sent Mr. Wehrman, a structural engineer, to the home twice to investigate the possibility of repair and confirm the structural integrity of the masonry and mortar. (Wehrman Oct. and Dec. Reps.) Ms. Butler may dispute Mr. Wehrman's findings, but she does not dispute the fact that he visited the home twice at Allstate's request. Each time, Allstate conveyed to Ms. Butler Mr. Wehrman's findings in support of repairing the home. (Claim History ¶¶ 11, 22.) Ms. Butler has produced no evidence that would allow a reasonable fact-finder to conclude that Allstate failed to adequately investigate her claim.

14

Second, Ms. Butler argues that even if Allstate went through the motions of an investigation, Allstate "marshaled the facts [but] disregarded them." (Pl.'s Br. in Opposition 7.) This claim is akin to an allegation that Allstate "intentional[ly] . . . fail[ed] to properly subject a claim to a cognitive evaluation or review." *Jones*, 1 So. 3d at 32. There is no foundation adequate to survive summary judgment in support of Ms. Butler's contention. Although Allstate eventually decided to credit those structural engineers and contractors who took the position that the home was repairable, the undisputed chronology of events reveals that Allstate took Ms. Butler's position seriously. When Ms. Butler questioned the structural integrity of the home and the masonry, Mr. Hamilton twice sent Mr. Wehrman to the home to investigate. (Claim History 8, 21.) Considered in the light most favorable to Ms. Butler, the evidence only shows that there are conflicting opinions, not that Allstate failed to subject her claim to a cognitive review by intentionally or recklessly disregarding the evidence in support of Ms. Butler's position.

Third and finally, Ms. Butler claims that Allstate employed Mr. Wehrman for the sole purpose to "provide the pretext needed to deny payment of Ms. Butler's claim" and that "[Mr.] Hamilton . . . used [Mr.] Wehrman to support his conclusion" not to pay a claim for full reconstruction. (Br. in Opposition 4, 7.) Essentially, Ms. Butler argues that Allstate "manufacture[d] . . . a debatable reason to deny a claim." *Jones*, 1 So. 3d at 32. However, Ms. Butler only pleaded a failure to *investigate*; there was no allegation that Mr. Hamilton manufactured a pretextual reason to refuse to reconstruct Ms. Butler's home. "A plaintiff

15

may not amend her complaint through argument in a brief opposing summary judgment."
*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, the court will not consider this argument.[6] Summary judgment is due to be entered in favor of Allstate on Ms. Butler's "abnormal" bad faith failure to pay claim.

## V. CONCLUSION

Based on the foregoing, it is ORDERED that Allstate's Motion for Partial Summary Judgment (Doc. # 25) is GRANTED on Counts II, III, IV, and V of the Complaint. The case will proceed only on Ms. Butler's breach of contract claim, alleged in Count I of the Complaint.

DONE this 25th day of April, 2011.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[6] Even if Ms. Butler had made this allegation in her Complaint, there is not sufficient evidence to allow a reasonable fact-finder to find in Ms. Butler's favor on this allegation.